Mr. Begley, whenever you're ready. Good morning, Judge Hurwitz, Judge Hawkins, and Judge Rosenthal. Brendan Begley from Weintraub-Tobin, and may it please the Court, on behalf of Plaintiff and Appellant Terrance Walker. It seems to me, Your Honors, that this case really boils down to the District Court overlooking critical elements of the prima facie case of discrimination and retaliation, and then after misconstruing those elements, overlooking conflicting evidence that creates a triable issue of fact that should have thwarted summary judgment in this matter. I believe opposing counsel's arguments could be excellent in front of a jury. If a jury were to believe that my client said, kiss my butt's butt, and that he's fibbing about it now, I think a jury could conclude, yes, that's insubordinate activity, and therefore termination is warranted. But at summary judgment, my client says, no, I never said such a thing, no, I never raised my voice, no, I never behaved that way. And so since he says that, as the Court well knows, at summary judgment, you have to take what he says is true. In your view, do you defeat summary judgment in this case even without reliance on affidavits and declarations? In other words, is it enough that your client says, that just didn't happen? You mean without relying on his own affidavit? No, I'm sorry. Without relying on the ones that the judge excluded. The comparators. Oh, without the ones about similarly situated employees? Right. Oh, absolutely. Absolutely. There's more than enough evidence here. With a he said, she said sort of thing like this, it's a, well, this is summary judgment, it's not a job interview, I guess. When you have a he said, she said like this, you have to have a trial about it. How do you, what I'm asking, I guess, is, let me ask it a little differently. You have to show a prima facie case of racial discrimination as opposed to that they, that they're, the reason they've said they fired him is the wrong one. How do you show a prima facie case of racial discrimination in the absence of the excluded affidavit? That's an excellent question, your honor. One critical way to do it that many circuits have recognized is that if the employer's explanation for the termination is deceitful, if it is not consistent with the facts, then that alone gives rise to an inference of pretext. Because if they're lying about it, it must be to cover up something bad. And that would be the most likely bad reason. Yeah, and the reason I was asking is I wasn't sure whether or not the argument that a similarly situated white employee wasn't disciplined or fired comes in at stage one or stage three of the McConnell-Douglas analysis. Where does it come in? It can come in both. Likely at all. Is it necessary at stage one? Or is it enough to get past stage one for your client to plead that he was fired because he was African-American? He has to do more than just plead it at stage one. At the prima facie case. He has to plausibly plead it. He has to plausibly plead it. He has to show the fourth element, which is either that similarly situated employees were treated differently, similarly situated employees of a different race were treated differently, or other evidence that gives rise to the inference of discrimination. Assume he plausibly plead it, you get past stage one. At stage three, in order to rebut their argument, their non-protextual reason, does he have to once again show racial discrimination or is it just enough that he shows that the non-protextual reason may not be true? It's enough to show that the non-protextual reason may not be true, and that's under Reeves v. Stanton. Yeah, see, that's why I was, I was, what confuses me a little bit about this case is whether or not it was really your client's burden at stage three to show the prima facie case of discrimination, which is what the district court concluded, or whether it was your client's burden at stage three simply to show that the reason that the employer gave, the non-protextual reason, wasn't true. That's why I was, that's why I've been asking you these questions. I'm not sure why the judge is looking at the racial discrimination part of this as much as whether or not you had met your burden at stage three to show that the proffered non-protextual reasons were, might be protextual. I was a little confused by some of the district court's approach as well, and I should have asked at the beginning if I may reserve five minutes for rebuttal. I was also confused by the way the district court did it. Having clerked for the Ninth Circuit myself, I know courts are very busy, and I think that there may be an inclination to say, look, I can tell a good case from a bad case, and so I'm going to kind of shortcut it. If I don't think this case really is that strong, then I'm going to grant summary judgment and maybe we'll be done with it and we won't have to have a trial. Perhaps Judge Jones thought that my client didn't have a very strong case, but because it's summary judgment, really that's the purview of a jury, to hear my client's testimony and to hear Ms. Perales' testimony and figure out who's more likely telling the truth. And if Ms. Perales is more likely being deceitful, that alone is evidence that creates the inference of discrimination. Can you deal with the hearsay issue, the judge, the district judge excluded some evidence that you proffered on the hearsay theory? Tell us why he was wrong in doing that if you think he was. Well, under existing case law, it's clear that in order to save the non-moving party from suffering a summary judgment, Judge Jones could have said, well, I'm going to allow some hearsay in to defeat summary judgment so long as I'm pretty confident that once it gets to trial, that flaw will be able to be cured. Is that a discretionary ruling by the judge or is it just that the hearsay objection doesn't apply under those circumstances? That's a great question. It seems to me it's a little bit... I'm doing well today. It seems to me like it's a question of law and I'm adding to it. One of the things... See, the way you phrased it, it sounded like the judge could let it in and then we'd be reviewing for abuse of discretion. The judge had done that in my client's favor, of course, I wouldn't be standing here right now. But if he had done that, I think that would be a discretionary call. Well, put a different way, what is the required type of evidence to show that at trial there would be admissible testimony that would not be subject to hearsay from a comparator? That's a really good question. My recollection from the authorities that I reviewed is that it doesn't really spell that out very clearly for us. We don't know what standard of review to apply unless we know what level of... Is it a question of law or is it a question of the judge's discretion? I think it's a question of law, though, because right now the authorities say that you can do that for the non-moving party. There's no authority in the world that says that you can do that for the moving party. Right. But with the non-moving party, you present a declaration to Judge Jones, it's hearsay, there's no dispute about that. Our law says that shouldn't matter if it can be reasonably established that it would be admissible at trial. How do we review that second issue? Great. So let's just assume, worst case scenario for me, that it's under the abuse of discretion standard. That alone might not be an abuse of discretion, but for the fact that he, Judge Jones, did it the opposite for the other side. He allowed them to...   And so when he treats them differently, that's an abuse of discretion. Let's assume that he was wrong. Oh, I see your point. Your point is that if he was going to exercise his discretion, he should have exercised his discretion. You have to do it both ways. You can't say, well, I'm going to let you get away with it. That's an abuse of discretion. When you treat one side, you hold one side's feet to the fire, but you let the other one off. That's an abuse of discretion. Is your argument strengthened by the fact that your client also, not subject to hearsay, submitted a declaration saying, I dispute that these facts occurred? Absolutely. Absolutely. And that's why I think opposing counsel might have a very good jury argument, depending on who's believed. But when my client says it's summary judgment, I didn't do those things. It'd be one thing if we're talking about objective sales numbers, and he says, I had 14 sales, and they said, no, our records show that you only have five. I mean, that would be a different story. But here we're talking about subjective criteria, which, as the court knows, is very, very suspect in discrimination cases, because it can be used as a mask for racial animosity. So, I think the judge made the same mistake with the retaliation claim. You know, I mean, the case law is just very clear. Let me ask you about the retaliation claim. It looks to me, and tell me where I'm wrong, on the evidence in this case, it appears that the decision to fire your client, it seems to be undisputed, was made before he made his complaint to the agency. So, how can the firing be a retaliation for making that complaint? I'm glad you asked that. I respectfully disagree. I think the recommendation to terminate his employment made by Ms. Perales was made before he submitted the claims to the agencies. That's true. But the ultimate decision to terminate him was not Ms. Perales's. That was just a recommendation. And I have to say, she made that recommendation after he had told her, I believe there's grounds for you, you know, for a complaint that you're treating me unlawfully here. You're treating me differently. Right. But the First Amendment issue, the retaliation has to be for going to an, you know, for filing a claim. Saying to your superior, I think you're treating me unfairly, doesn't give rise to the retaliation claim. I beg to differ. It most certainly does. There's two different kinds of protected activity. One is actually going to an agency, or actually participating in an investigation, but the other kind is also complaining to your supervisor. That's certainly protected. Do you think that you can make out a retaliation claim? Your supervisor says, I don't like your performance. You say, I beg to differ. And then you're fired? No. That would not be a retaliation claim. That would not be protected activity. But you say there may be grounds for a complaint here, that's sufficient? Because that's what your client said. He said, I think I have legal grounds for basically showing that you're treating me discriminatorily. Well, he didn't say. He didn't say. Actually, he didn't say those words. He said, he said, I think I may have a complaint. Right. He said, I think there's legal grounds for this, in one quote. I believe it's a different part of the record. Does he have to be more explicit? I'm sorry. I'm sorry. I didn't mean to interrupt. Well, I didn't mean to interrupt you. Does he have to be more explicit that this is a racial complaint that he's making, a complaint of racist treatment? I have to concede that some courts seem to suggest that you do have to be that precise, but other courts kind of say, no, it doesn't, as long as you know what somebody's talking about. But don't you have to at least hint at it? I honestly, in my opinion, he honestly did. And this comes from the perspective of somebody who I've spent 99% of my career defending management. I only take employment cases for plaintiffs when they get up on appeal. I wish I could have defeated a lot of summary judgment, I'm sorry, gotten a lot of summary judgment motions on something like that, defending my clients throughout my career. And so my honest perception as a defense attorney who defends employers is, yeah, he said enough here. He said, look, I have legal grounds. I believe you're treating me differently than other employees. Differently, why? I mean, obviously, he's one of only two African-American employees in this whole sales force. And so I think given the circumstances of this case, he did say enough. And then in a different part of the record, he actually says he uses the word discrimination as my recollection. And one part in his deposition testimony said, I think I have legal grounds for this. You're treating me differently than other employees. But there's a different part of the record that I cite in there where he said something about discriminatory fashion. What is your best Ninth Circuit case for saying that what he said was precise enough? I can't think of a Ninth Circuit case. I'd say Reeves v. Sandoval, the U.S. Supreme Court case. Sometimes we follow that. Sometimes, yes. You wanted to save some time for rebuttal. This is your second rebuttal. Yes, I did. I guess I want to reach out to Schwong and Porter, because I had involvement in both of those cases. But I can't say they addressed your specific point, Your Honor. Thank you. All right. I'll reserve my time. Thank you. Mr. Peterson. May it please the Court, Thomas Peterson for the Appley Charter. I'd like to start with the discrimination claim, and I'd like to go particularly to the fourth element of the Prima Fascia case, which is the requirement of disparate treatment as compared with people who are not part of the protected classification. There isn't any evidence here that non-African American employees were treated any differently. Don't the affidavits say differently? Well, Your Honor, the — no, I don't think they do. I thought one of the participants in the call said that there were Caucasian people on the call who raised their voice, who argued with the person for management. Am I wrong about that? Your Honor, I think what you may be recalling is the declaration of Mr. Wagoner — or it wasn't a declaration. It was the statement of Mr. Wagoner, Adam Wagoner, who was a Caucasian gentleman. He — he — the plaintiff purported to testify, or said in his declaration that he spoke up, but he wasn't on the call at that point. He'd left the call. So that's plainly hearsay. Well, there is a declaration, as I recall, that says something like Caucasian employees who act this way are not disciplined. And there — and the declarant seems to be thinking of a person. Why isn't that sufficient? It's — it's not sufficient because it is too conclusory in this context. You can't simply make — That's not the conclusion the district court read — made, though. The district court said, I'm not letting the declaration in. Well, no, he did let in some of the declarations. Perhaps you're talking about the Wagoner statement? Yes, the Wagoner. Right. Okay. The Wagoner statement is not a declaration at all. It's not verified. And notice also that as to these other statements, what happened was a series of statements were submitted in June, and then in July most of them were turned into declarations. Mr. Wagoner's wasn't. With respect to Mr. Wagoner's statement, what he acknowledges is that he was threatened by the same Ms. Perales for — for — for action based upon his conduct in the call, number one. And number two, he — he — he resigned from the company. So we have no way of knowing whether he would have been treated in a comparable fashion. Let's — let's go back to where Judge Rosenthal and I started, asking questions of your colleague on this. Isn't it sufficient to make the prima facie case that he's an African-American who was fired and who has established a question of fact about whether the reasons given were pretextual? I think — I think, Your Honor, that would be the — now we've moved out of the prima facie case, I think, into the — the last element of the McDonnell-Jones case. Sure. Let's start at — I think he — let's assume that he pleaded a prima facie case. All right. That's stage one. Stage two is you come back and say, we didn't fire him because he was African-American, we fired him because he's a loudmouth, to use a — to use a short — shorthand term. He comes back and says, I never did any of the stuff that they accused me of. Why doesn't that get him to a jury? It doesn't because you — I think you have to look closely at what exactly has been controverted. He was just — But you give three incidents, and he says none of them ever occurred. No, he doesn't say — I didn't do — I didn't do that. Not the way they were described. Not the way they were described. No, that — that's — that's important, Your Honor. He doesn't — he doesn't dispute. The only incident that he says never happened relates to the April 8th counseling for lower sales. He denies that occurred. Of course, he was discharged for violating the company's conduct policy. The other two incidents relate to that, and he doesn't deny that they occurred. What he says is that I did not behave in a way which would justify discipline, in effect. What he's saying is I didn't yell, I didn't use profanity. But that's denying what happened in the sense — not that the phone call didn't happen, but that what occurred in the phone call happened in a materially different way than the employer proffered as its justification. But Ms. Morales — I'm sorry to interrupt, but that's my same point. Ms. Morales doesn't say I fired him because he was on these phone calls and — Right. — and spoke badly. He says he used profanity, he did the following things, that's why I fired him. And he says, no, I didn't. He may have been contentious on these calls, but that's not her reason given for — that's not the reason your nonprotextual reason. It's that he used profanity and was — and he says I didn't do that. Well, the reason assigned is he violated the code of conduct policy, which is the way you behave around the office. And it's not just comes down to profanity, it comes down to the reaction about his demeanor and behavior. Now, it's true. He says my demeanor and behavior was fine. But the problem is that's basically a subjective determination on his part about whether or not his conduct was acceptable. The employer, you know, is supposed — what the employer has to show is that the employer had a reasonable basis for concluding that he should be discharged, and that basis has nothing to do with a discriminatory animus. That's a subjective employer evaluation that the employer is entitled to make. And the mere fact that the plaintiff comes in and says my performance was great, my performance was acceptable, that doesn't create a triable issue of fact under cases like this Courts Bradley case that says that's insufficient to create a triable issue of fact. And again, he's not denying that these incidents occurred, again, with the exception of that business about his sales performance. Well, he's denying — he's not denying that there were interactions on these occasions. He's denying that his conduct during those occasions was such — was the conduct that Ms. Morales described, you know, that you describe in your nonprotextual reasons. Isn't that — is that fair? He's denying that his demeanor and behavior was inappropriate in that context. Correct. So what is he supposed to say to create an issue of fact? I think in order to create — well, he could show a lack of comparability in terms of treatment as to — No, no, I'm talking about pretext — I'm talking about whether or not your reasons were pretextual. Well, he has to create — it's true that you can create an issue of pretext if you create a credibility issue with respect to the employer's stated reasons. But what I'm saying is when you do not deny the basic relevant encounters — let me just leave it there. Well, sure. I had three meetings with this person who now says during those three meetings I was discourteous and et cetera, et cetera. Right. And you say, I did have those three meetings with this person, but I wasn't discourteous. Why doesn't that create an issue of fact? Because under cases like Bradley, I don't think the employee's affirmation of the employee's affirmation or declaration that I behaved appropriately, that my — Is it because it's too subjective? There is an element of subjectivity to it, Your Honor, but the point is it's the employer — excuse me — absent discriminatory animus who gets to make the workplace decisions. Sure. You really don't have to try the question. You're assuming the conclusion. Well, I don't think so. Again, I'm trying to figure out what the opposing declaration or affidavit is supposed to say. So let me just give you a hypothetical so you don't have to tell me I'm wrong about the facts. Let's assume that Ms. Morales said I had three meetings with him and during those meetings he was abusive and discourteous. And that's a good reason for firing somebody. The employer gets to make that decision. He files a declaration that says we did have those three meetings, but I wasn't abusive and discourteous. Does that create a question of fact? No. No. It doesn't because he's — He must say, no, I was really good. No, no. I said nice things. What does he have to say about that? No, no. He's vouching for his performance, which is for the employer to evaluate. What he has to do is he has to come in and say something like, I was — I overheard my employer say something that displays an animus. I — I would say you and I are focusing on different issues, and that's why — I'm sorry, Your Honor, I thought you wanted to hype an example of what he could say. Yeah, no, we're missing each other on this. I'm sorry. He's — let's assume he's established — he gets past the prima facie case of racial discrimination. I understand that. It's a pretext now. And you say, no, he was really — he was a nasty guy in three meetings. He kept interrupting like the judges do. He wouldn't let me finish my thoughts. And that's a good enough reason for an employer to say I don't want your end anymore. And he files a declaration and says, that's not what happened. Is that enough? No, because — because his — his evaluation of his own performance on something like this doesn't — Well, but it's not an evaluation of his performance. He's saying what she says didn't happen. He's not saying you said I had three sales when I actually had six. That's not what's being argued about. I understand, Your Honor. That's — it's different. But my point is, there is — there is an evaluation that is being made about workplace demeanor, conduct and the like. Which is unreviewable. No, I'm not saying — in this context, it's not reviewable — it's not actionable, is I guess what I would say under the civil rights laws, unless you can — you can do more than say, as the employee, I behaved very well. This — this isn't right. I didn't raise my voice. That that does not undercut the credibility. You were disrespectful and abusive, and my response as the employee is to say, no, I was not disrespectful or abusive. That's not a question of fact? I don't think it creates a question of fact as to whether or not the employer was — not of material fact with respect to whether the employer was motivated by racial animus. I don't think whether or not he was abusive or not is the — is really the question that would have to be resolved if you tried this case. What would have to be resolved is whether he acted with racial animus, or the employer did, and that would require more than — Sotomayor, I agree with you. It requires — he has to — he has to make a racial animus case out. Yes. But let's assume he had. Let's assume he'd shown that he was — the only employee fired in the last seven years at the company was African-American. Okay. And then the company came back with exactly what it said here. You know, we didn't fire you because you were African-American. We fired you because you were abusive in meetings. And he said, no, I wasn't. Would he then have a jury question? Well, I think you're adding an important fact now, which is the disparate treatment fact. So your real problem here is not with whether or not he demonstrated that the reasons given were pretextual, but you don't think he ever established, in the first place, enough to get to the jury on racial discrimination. No, I think both, Your Honor, because I don't think — and especially — Well, that's why I gave you — that's why I changed the facts. So let's take a Blayton case of racial discrimination, and they say, yeah, we hate to fire the only African-American guy we have, but he shows up late to work all the time. And he files an affidavit that says, no, I don't. I'm on time every day. Doesn't that get him to the jury? Because of the — because of the disparate treatment of African-Americans, I think it does. Right. So what we're really back to on your case is whether or not you think he's made a prima facie case of disparate treatment of African-Americans. Your Honor, I disagree with you about — I mean, I think it's relevant to that, too. But I don't think it's irrelevant to the inquiry with respect to pretext. I think they tend to overlap to a large extent. So if you have an addition — I'm sorry. Go ahead. Finish your thought. Well, I also wanted to mention, you know, we've sort of gotten into a tunnel here about what we're focusing on. You know, there's other important factors which bear on this as well, which you have to take into account, which is that Ms. Perales, who made the decision, is the very person who hired him. Yeah, I called — I said Perales, and I apologize. But, yeah, so that's regarded as generating a very strong inference for the defendant. Mr. Walker testified — this is in the record at 277 to 280 — that no one at Charter ever displayed — never used any racial reference or any — he did not — he did not ascribe to them any racial animus. But is that summary judgment? I mean, I — But this is his own testimony. By the way, my reading of this case is much like your opponent's, which is you're going to win it. The question is at what stage. And so the — so I guess my question is, does that matter? Those are inferences, those are facts. They cut in your favor, but do they — they don't — if he'd made out a prima facie case otherwise, they wouldn't obliterate the case, would they? But, again, I go back to I don't think his mere denial with respect to his behavior, when you take into consideration the whole context, which you have to do, is enough. Every case, there's going to be some collateral argument about some facet. And I know, Judge Rosenthal, I think you want to ask me another question. Two real quick questions. The first is, if you add to this mix not merely his own no, I wasn't statement, but also the evidence that at trial I would be able to bring you Mr. Wagner, who would say X, if you add to that, is that enough to generate a factual dispute material to determining pretext or the credibility of the employer's proffered reason? First question. Second question on retaliation, was he specific enough in the oral complaint to Ms. Perales? First — And don't worry about the clock in your answers. First answer. The Code is very clear about the need for there to at least be sworn testimony from witnesses. As I said at the outset, they demonstrated — You mean Rule 56? 1746 of the Judicial Code, the requirements of an affidavit and a declaration. Mr. Wagner never furnished that. You know, I think there's something important about the requirement of swearing an oath. And Mr. Wagner, there's also indications in the record that Mr. Wagner said things to Ms. Perales that were supportive of Charter's position in the case. So I don't think you can — that with respect to leniency as to the admission of evidence, that getting around the oath requirement would suffice, and I don't think that's what the cases are really focusing on. They're talking more about things like lowering the hearsay rule because we know you'll be able to bring in the person who will be able to testify. So even if Mr. Wagner had showed up at trial or the judge had a reason to believe Mr. Wagner would be physically present at trial to testify himself, that still wouldn't do it? I don't think so. I think then you get Mr. Wagner to raise his hand effectively in writing and say that he is going to do it. And we've cited cases, not within the circuit, I concede, at page 40 of our brief that say that this is a requirement that one has to follow. And then again, as I said before, I don't think Mr. Wagner's — if we accept everything in Mr. Wagner's statement, it doesn't establish a disparate treatment by a — as to a Caucasian. And then I'd like to turn to Your Honor's second question then about the elements of retaliation. And this, I think, focuses entirely on the — on the oral statement he made to Ms. Perales on the telephone on April 23rd. With respect to that statement, it is not enough to simply say that I am going to complain, that I think I have been mistreated. I don't — it is also not even enough to suggest, I think, that, you know, this somehow has legal implications. If you look, for example, at this Court's decision in the Crown-Sellerback case, it talks about the need to connect up the statement to the illegality that you're going to be complaining about. And that's important because the statute wants to encourage employers to make an investigation. The employer is entitled to some rudimentary knowledge about what the claim is. It's retaliation for exercising the protected right, which means there has to be a clear exercise of the affirmative right. Two days after he had that conversation, he filed his Nevada board claim. Why didn't he ever share it with anyone? Why didn't he make any sort of disclosure about all of this? So I do — and also, it's also clear here that the decision that was to discharge him was set in motion before the conversation on April 23rd even occurred, because the purpose of Ms. Prowlis' call was to tell him that she was going to recommend a corrective action, which is the terminology for leading to discharge. Sotomayor, you've overstated. I have, Your Honor. But I do have a question for you, unfortunately. I thought you granted me permission. We did. We did. But I wanted to begin by saying I wanted to keep you up here a moment longer. And I realize when you were answering Judge Rosenthal's question what my concern was. Mr. Walker submits a declaration that says Mr. Waggoner also spoke disrespectfully during the meeting. He's a white guy. Nothing happened to him. Mr. Waggoner submits an unsworn statement. And the question I thought Judge Rosenthal was asking, and I'm not sure he answered, is this. Given Mr. — and the judge excludes that part of Mr. Walker's declaration, his hearsay, doesn't Mr. Waggoner's unsworn statement give sufficient reason to believe that Mr. Waggoner would be available to testify at trial about what's in his statement? Which is what Mr. Walker said would happen. Yeah. Mr. Walker has a declaration. He says Mr. Waggoner was also on the call. He spoke disrespectfully. Nothing happened to him. He could testify to that effect. That may be hearsay. It may be not. But Mr. Waggoner — he then has a statement from Mr. Waggoner that I was on the call and here's what happened. Whether or not it's good or bad, that can't be admitted. We agree. But doesn't that give us sufficient reason to think that Mr. Walker could produce Mr. Waggoner at trial? May I just clarify what Mr. Walker's declaration says? Mr. Walker was not on the call at the time Mr. Waggoner spoke. Right, right. Yeah, Mr. Waggoner — Well, Your Honor, I think you're drawing a conclusion. That's where he heard it from. He says he could have talked to anybody on the call. But that's not the issue. The issue is whether or not he could produce Mr. Waggoner at trial to support his case. I appreciate it. I just wanted to make sure we were on the same wavelength. There's nothing about what you've recited which says that Mr. Waggoner has any  And notice also, again, nearly everyone who gave an unsworn statement on June 25, they were replaced with sworn statements except Mr. Waggoner. I think we would just be engaging in total speculation to think that there's anything you could draw from this which would suggest that Mr. Waggoner would come and testify. And I also think then we have to inject the standard of review and say, does this become the district judge's decision? So what does Mr. Walker have to present to the district judge to make a sufficient case that Mr. Waggoner is going to show up at trial? Or that Mr. — or that someone on the call is going to show up at trial, such as George Ross? Well, I'm not — I'm not sure. But may I answer it this way? What he could do is go depose Mr. Waggoner. Do I understand — What he could do is he could go get a declaration like he did from everybody else. So this is — Yeah, but we have a rule. We have a rule that says a hearsay objection to information submitted by the opponent of a motion for summary judgment isn't enough — isn't — you know, it's not enough that it's just hearsay if the guy can produce somebody for trial. So under the circumstance, you're wiping out that rule by saying he has to depose him, because then he has to — then the hearsay objection doesn't come in in the first place. I don't think I am, Your Honor. I think, first, it would be an abuse of discretion standard. But I think, secondly, the hypothetical you gave me has no plus factor in it which suggests he would come to trial or testify. I — you know, it's just that he wrote this letter, and somehow, therefore, we should assume he would testify about those things. And I don't think that ought to be enough. It's quite different, for example, than what the judge did with respect to these notes, the — in the ethics point report, where Mr. DeLuke was the company senior executive who made the entries. And they only redounded into the plaintiff's benefit anyway, from an evidentiary point of view. So I know you've been very indulgent with the time. No. Thank you. And you ought to charge your client extra for today. You just — we kept you up over time. Mr. Begley. Your Honor, there's just four things I want to address very quickly. Two of them I can dispose of quite rapidly. To answer Judge Rosenthal's question, I think the Ninth Circuit cases that helped me the most are Nante, which is a 1981 case, which was, I have to admit, subsequently overruled on a different ground, and Noya is a 2007 case. I think those two cases really stand clearly for the proposition that subjective criteria is very suspect. And when the employer's explanations lack credence, when it seems they're deceitful, then you can't have summary judgment. So back to the second question, what is the minimum your client would have had to do to get the district judge to say there's a reasonable likelihood that these witnesses whose statements are only presented in inadmissible form now will show up at trial, making their testimony admissible? I think he doesn't have to do anything more than he already did, as Judge Hurwitz noted in the — to opposing counsel. He didn't just submit a hearsay statement saying, I think I know somebody who might say this when he shows up to trial. He actually submitted what he attempted to be a declaration, a sworn declaration, setting forth that information. But it wasn't? It wasn't sworn. That's true. So what do we do with — what's our standard of review? And by the way, I'm not sure the judge went through this thought process. The judge just said hearsay. But let's assume the judge said, well, I know the Ninth Circuit says this stuff can come in sometimes, but I'm not — you haven't really shown that this guy is going to show up at trial. How would we review that? If it were just that, I'd say it would be a difficult thing, and you'd have to decide it's a legal question, I suppose. And so that would be under these circumstances. So should we say to the judge, you shouldn't have just excluded it as hearsay, you should have gone through this second stage analysis, and you didn't, and we're not going to do it in the first instance? I think when I clerked here, the strong inclination was not to say more than you had to. And so I think you don't have to say anything more than, well, Judge Jones, you know, you impose this rule on Mr. Walker, but you let the other side out. You let them submit evidence that would have been hearsay and you considered it anyhow, so you have to be balanced. If you're going to do it one way, you have to do it the other way. In this case, never mind what the standards are. If you're going to do it for one, you've got to do it for the other, and that's the quickest, easiest way to say that was an abuse of discretion and you can't do that, and therefore summary judgment wasn't appropriate. And he's not going to redo the summary judgment. We're going to go to trial then. It's not like he's going to have to say, all right, now I'm going to have to figure out should I have let this in or not. You should have because you did it for the other side. I said Reeves v. Sandoval. It's Reeves v. Sanderson. Sorry about that. That's a stray remarks case pretty much, isn't it? Sorry? That's most famous as a stray remarks case. Most famous for that, yes, but it also has a lot of language in there about how it's not a very tough standard for the plaintiff to show a tribal issue of fact. Same actor defense. You know, I have to tell you, even as defense counsel, I love it because it seems it has such a simple appeal, but it's intellectually dishonest. The same actor defense, if I were a chauvinistic employer and I hired a woman who I thought was going to conform to gender stereotypes and then it turned out that she was outspoken and she didn't just defer to me and then I fired her for that, can you really say that I didn't fire her for discriminatory reason? Of course not. Should I be able to avoid liability for that simply because I hired her because I thought I could push her around? It is an inference that jurors can draw. The idea that summary judgment can be based on the same actor inference, all reasonable inferences need to be drawn in favor of the non-moving party. It's wrong to use that at summary judgment. I'm saying that even as defense counsel. Last thing. You know, you can prove discrimination through the McDonnell-Douglas shifting burdens or through direct evidence of discrimination. Opposing counsel's argument, as I understand it, basically says you can never have an employee say, I didn't do what they said I did and avoid summary judgment unless he has direct evidence, he or she has direct evidence of discrimination. That's not the case. That's why we have either or. You have both. If you don't have direct evidence of discrimination where somebody says something racially offensive, then you have the shifting burdens. And the fourth element of the McDonnell-Douglas test is either similarly situated employees were treated differently or there's other evidence. And here we have other evidence. The employer was deceitful about its reasons for terminating his employment. That alone raises the inference of discrimination. You've overstayed your time, but now you're welcome. So unless my colleagues have other questions, this case will be submitted. And we thank both sides for their excellent arguments and briefs. Judge Rosenthal, enjoy your stay in California. Thank you. Keep the weather coming the way it is, and you've got it. Last case on our calendar this morning for argument is Tessera, Inc. v. Toshiba Corporation.
judges: Hawkins, Hurwitz, Rosenthal